Good morning. We'll proceed with our second, uh, case of the morning. We'll continue on through our fifth case without a break, but after our fifth case, we'll take a short break to reconvene the panel. So with that, let's move to appeal number 20-29-62 Continental Western Insurance v. Country Mutual Insurance. Mr. Carlson, I think you have the stream on. Could you please turn that off? Yeah, I did turn it off. Okay. Thank you. Sorry about that. Good morning, Your Honors. Keith and Mr. Jaffe. Good morning. Keith Carlson for the defendant appellant, Country Mutual Insurance Company. Your Honors, this is just a dispute over money between two insurance companies over a factual issues of who owns, who owned it, who owned or own, who, what parties owned, a certain ambulance involved in a motor vehicle accident. There were three vehicles involved in this accident back in 2012. The, uh, Country Mutual, the policies actually are quite similar. The underlying lawsuit, the ambulance service was sued and the Hamill was sued as well as Alhambra. Country Mutual paid for the defense of the ambulance service. Uh, Continental paid for the defense of Hamill, it's named insured in the case. The, uh, the case is eventually settled with Country Mutual paying virtually all the settlements in their three lawsuits. They weren't, they were just someone crossing the lane, uh, to an exit who had another car who hit a third car. And so there were a couple of lawsuits, typical auto accident case. Now this dispute before the court is as to the ownership of the ambulance. The ambulance service was just a creature created, uh, not even an official corporation, but created by the two municipalities, Alhambra and Hamill. And we have in the evidence, the, the bylaws that they, uh, their creation of this ambulance service. And, uh, we have testimony from the treasurer, the one of the principles of Continental's insureds as to the validating and authenticating the bylaws and the intent of the parties that all assets were to be owned by both entities, that they were all both owned, that liabilities were shared. And when they created this special entity, which had of course in an auto accident, you don't know who's going to be sued. Are the principles going to be sued? Are there some other entity going to be sued? Here? Uh, the two policies, again, have very similar coverages. They are the standard business auto coverage forms. Uh, Continental makes a big argument about that fact that the country policy specifically listed the ambulance in its policy. In the business auto coverage form, there are certain symbols that are for covered autos. The policy applies to, you know, bottle injury caused by the use of a covered auto. The, in the country policy, it's only symbol seven, eight, nine, which are specifically described autos, hired autos and non-owned autos. And in the Continental policy, it's much broader. It's any auto. So there's this argument continuously throughout the briefs of that the ambulance is specifically described on country's policy or listed. Well, it's specifically included on Continental's policy, which is much broader for a higher premium and also higher limits of 5 million versus the 1.5 million limits of country's policy because they include that auto because they include any auto that is, uh, can be, where, where, uh, Hamill couldn't be sued any auto. So Mr. Carlson, what, what do we make of that? I mean, it's, it's in the country mutual policy under schedule autos schedule of covered autos you own. It lists the 2010 Freightliner ambulance and under the Continental policy, it does not. Right. I don't think there's any significance as to the issue of ownership or intent because those policies have no, are hearsay documents as to intent. They're not done by any party with foundation knowledge of the ownership intent issue. What, but also your honor, it, the country policy is limited to only specifically described auto. So it doesn't cover any auto. So if it was any other auto, other than the specifically described one, it wouldn't be covered auto. So they had to, so the limited coverage for those two autos that the ambulance service was using, but the Hamill policy covered that auto also because for, for it was, it, Hamill was sued for, uh, liability in connection with the operation of a motor vehicle, the same ambulance and it ensured that vehicle as well. It ensured it had in the schedule covered autos. It had also the possibility of us specifically described autos, but that wasn't the symbol used. They, the broader category of any auto. So it would include any auto they owned, any auto they borrowed, any auto they acquired, any auto that they were sued for the use of. So their, their coverage is much broader. So it doesn't have anything to do with ownership. It just has the extent of how broad it is on covering any auto versus only a limited class of autos. But the way I read the continental policy, and maybe I'm reading it wrong, but the way I read the continental policy, it seemed to me that for any auto that continental owned or any commandeered auto, then continental was the primary insurer. But for any other covered auto that continental didn't own continental was the, was the secondary insurer or the excess insurer. Correct. I think the other insurance clauses are virtually identical, your honor in both policies. And they do state, as you just said, that for any auto they own or commandeer that their primary, any auto they don't own. And here our position is, is that Hamill is an owner of the vehicle as the uncontradicted testimony from the treasurer of Hamill, the very insured said they owned it. Their documents said they owned it. And here instead, the court, the trial court and continental relied on the certificate issued at one time where who knows who's put on it, is one party put on it, do they shorten it? But the courts have said repeatedly, as the cases we cited, that this is a rebuttable presumption. Then you look at the intent of the parties and we're the only party that introduced any evidence as to intent. We had the uncontradicted intent of the parties that were relevant with the foundational knowledge of the ownership. People like the police, they say to the police report, sorry. No, go ahead. Go ahead. Finish your thought. Uh, they cited to the police report, the bill of sale and the country policy, which are really hearsay documents as to ownership. They don't, they're not from anybody with knowledge of ownership or foundation of ownership. They, if you weren't in the court, just rejected that. Instead of normally when you have a rebuttal presumption, when it's rebutted, then it goes forward. What evidence do they have to, now that you've rebutted the presumption, what evidence do they show to the country, particularly your honors, where this was by summary judgment, where all inferences are construed in favor of country and against the movement. Mr. Carlson, let me, um, let me ask you again, get the benefit of your reaction to the, um, what strikes me about this. I think you're right. And just, and the way you opened, I thought your introduction was spot on that. It, this is a covered, you know, it's a dispute about, um, between two insurance companies as to who's covering these particular costs. What's really odd to me is we have an insurance company before us, your client that is basically arguing that the country financial policy does not mean what it says. That is very odd to me for an insurance company to be saying, well, you know, don't, don't focus on the fact that this particular ambulance is expressly listed as an owned auto. And you call that, you know, hearsay and you're relevant and all this other stuff. I got to tell you just as a matter of impression, we don't hear that very often from insurance companies. Most of the time, what insurance companies are doing is saying, take this policy and put it under a microscope and shine bright lights on it. Right? No, we're, we're not saying that we don't, we, we defend, we defended the ambulance service. We paid for all their fees. It is an insured vehicle, but it can, it's also, it doesn't mean that where it's owned by some, if it's owned by the ambulance service or listed as an insured vehicle, you don't have to have own a vehicle to specifically insure a vehicle. No, no, no. But the fact that it's listed in item three in that schedule in the country policy triggers the other insurance provision in five a I'm, that's my sense of what your adversary is going to say. And when it triggers five a it means the country financial is the primary insurer. So, and unless Mr. Jaffe surprises me, he's going to say, yeah, you bet it's express listing has a consequence. Right. But it's not, the other insurance clause is not triggered by express listing in a policy of specifically described autos. It's just, it's triggered by ownership. We're not disputing that our policy is triggered in this auto accident. We're saying that on the other insurance clause, their policy also provides primary coverage for a vehicle that Hamill owns. And uncontradicted testimony is that they owned it because that's separate. The intent of the pilot of the ownership is separate from the policy terms. There are facts that are plugged into the policy. We, that means you can have more than one party own a vehicle. You can have more than one party insure a vehicle. And that's what the other insurance clauses do. There's many circumstances where one or more or two or three insurers could all provide primary coverage. And then the other insurance clauses says where they do apply in the same level on the same basis, either excess or primary, each insurer pays their share determined by the pro rata limits. Why did country, why did country financial list the ambulance expressly in item three, in your view, in my view, they listed it because they were not going to ensure that the ambulance service wanted an insurance policy for if they are sued, will it cover us for our operation of vehicles? The ambulance service was just operating ambulances, not any autos like the municipality. So they needed to list it just like you would have in a personal auto policy. You would list your own policy, your own, I'm sorry, your own motor vehicle on your personal auto policy. Not, not any autos to make sure you're insured for that, your liability for your use of that particular motor vehicle. Whereas Hamill is also being sued for the use of that motor vehicle. What if, what if Hamill was the only one sued and ambulance service was not sued? Hamill would Hamill would continental say, Hamill we don't defend you. They admit that there it's a covered auto as well under their policy. They admit it. They admit they don't deny for secondary insurance for secondary payer purposes for second only if, only if, but it only if their, their argument on that is only that if it's that if it district courts affirm that they had no ownership at all of this vehicle, which is the issue we're appealing by certainly by summary judgment that where we think we've rebutted this, any presumption from the certificate of title that that once rebutted by competent evidence. And when you're looking at the intent, that's the only evidence that came in about the intent of the parties through this vehicle and policies of the entities of Hamill and the ambulance service. That was the only evidence of ownership. That's why you're not just relying on some piece of paper created by a police officer at the scene or a, or a, or a certificate of title because the courts reckon if it was only certificate of entitlement control, you wouldn't have the law about how it can be rebutted. But basically a district court says, well, I'm not going to allow anything to rebut it. I'm just going to go, I'm just going to rely solely basically on a certificate of title. And the policy of country was not a document related to the intent of Hamill as the ownership. It didn't have it. Those weren't the party that there was no foundation for their intent. It was an insurance document to ensure a vehicle that if Hamill was operating, they had liability insurance if there wasn't a bottle injury caused in an accident. And I think, again, I don't want to repeat myself because I think, I think in the cases you look at, when you look at the things that they relied upon, we certainly, I think we rebutted it with uncontroverted evidence where country would be entitled to summary judgment on the ownership issue. And then you would look at the other insurance clauses, which if they both own it, they say they share on an equal basis on a prorated basis. If the coverage is either both access or both primary, they share. So we're not saying here, continental says country, you pay for all the defense of Hamill and you also pay for all the defense of the ambulance service. We're not seeking for Hamill to pay for the ambulance services defense. We're seeking a sharing of a minimum of sharing the prorated clauses of the defense of Hamill. And, and again, Carlson, you wanted to reserve some rebuttal time. Now might be a good time if that's okay. Just briefly on the, and well, yeah, I'll, I'll, I'll address the attorney fee issue in my rebuttal. Okay. We'll give you a couple of minutes on rebuttal. Let's hear from Mr. Jaffe. Good morning, your honors may please the court. My name is Adam Jaffe and I represent continental Western insurance company. This is an insurance company versus insurance company case where two insurers represented a single risk. In this case, an ambulance owned by the Alhambra Hamill ambulance service. Uh, with your indulgence, I'll refer to the Alhambra Hamill ambulance services, the joint venture, uh, all parties acknowledged that the joint venture was the named insured and a policy of insurance issued by country mutual insurance company. Continental Western. Meanwhile, was the insurer for Hamill fire protection district. Uh, just for simplicity, I'll refer to that as Hamill fire, uh, following a serious ambulance on semi truck accident that would ultimately lead to three separate lawsuits, each lasting roughly six years, continental Western stepped up and defended Hamill fire country. Mutual refused to do so. Uh, as con is continental Western could not leave. It's insured undefended. It stepped up while country mutual stood down. Now, following a successful resolution of the underlying litigation that fully protected continental Western's insured continental Western filed the suit to recoup the attorney's fees and defense costs incurred in the defense of the protracted underlying litigation. Uh, continental Western SS court to affirm the district court's ruling, uh, um, awarding, uh, the fees incurred by continental Western, uh, the district court also awarded, uh, and post judgment interest since the entry of the district court judgment. Uh, while several ancillary, I would argue extraneous issues were raised in the briefs would perhaps be to helpful to speak for just about 10 seconds about what is not at issue here. First country mutual has at no points denied that Hamill fire isn't insured under the terms of the country mutual policy. Second, all parties acknowledge that the ambulance itself is insured on both policies. And the country mutual policy issued to the joint venture it's listed, uh, uh, in item number three is an owned auto of the joint venture. And then the country mutual policy, it utilizes symbol one to show that it provides coverage for all autos to be abundantly clear. This is not a question of whether the ambulance was a covered auto on either policy. Uh, it was a covered auto on both the dispositive question here is the priority of coverage between country mutual and continental Western. Uh, as we know from cases like the two minutes, a casualty company versus Royal insurance company, when two policies potentially respond to the loss courts, look to each policies, other insurance clause to determine the proper allocation. Uh, this is a pretty simple analysis here because the other insurance clauses are virtually identical. These are sort of standard forms issued by the insurance services office colloquially called ISO. Uh, the country mutual policy provides primary coverage for owned autos. It provides excess coverage, uh, for, uh, unowned autos. Likewise, the continental policy, uh, continental Western policy provides in pertinent part, uh, that for any covered auto you own and any common geared auto common geared autos are not at issue here. This endorsement, uh, provides primary insurance for any covered auto. You don't own the insurance provided, uh, by this endorsement is excess over the other collectible insurance. So for both policy, this is simple primary coverage for owned excess coverage for non-owned. So this brings us to the dispositive issue vis-a-vis coverage, continental Western contends. And the district court agreed that the ambulance was an owned auto of the joint venture. And therefore the country mutual policy provides primary coverage. Uh, Mr. Carlson is correct. Ownership is determined by intent. Uh, but a really crucial point here is that, uh, as the Illinois appellate court has held in cases like, like Sherry in cases like Galicky, uh, since the ownership is determined at the time of the collision, the intent of the parties must be judged at the time of the collision. Uh, and so the actual intent of the parties at the time of the collision is that this positive issue in this case, uh, I would posit that there are really two different forms of intents that we should be looking at here. Uh, both of which leads to the ineluctable conclusion regarding coverage. The first issue of intent, uh, and judge curse judge Scudder, I believe you were, you both alluded to this, uh, is, uh, what did each insurer intends to cover vis-a-vis the ambulance? Uh, the clear answer here is that country mutual intended to, and they in fact did issue a policy explicitly listing the ambulance as an owned auto. And it's item three list of owned autos by it's insured the joint venture. On the other hand, the continental Western policy includes its own list of owned autos lists. It actually does list six vehicles, none of which are the ambulances owned autos of Hamel fire. Uh, clearly country mutual intended to ensure the ambulance as an owned auto of the joint venture. They collected premiums on the basis of the ambulance being an owned auto of the joint venture, uh, continental Western intended to ensure the ambulance certainly, uh, but they intended to own it, uh, to ensure it, I should say as an unowned auto covered auto, certainly, but an unowned auto for which it would provide only excess coverage. Uh, now in my view, that in itself is dispositive because country mutual is, is explicitly saying this is an owned auto for which we're going to apply. We're going to provide a primary coverage. But if we look at another form of intent, uh, it leads to the same conclusion specifically the district court correctly held that the available evidence shows that the joint venture Hamel fire and Alhambra fire, who's not, uh, involved in this part of the case all intended at the time of the collision, but the ambulance was an owned auto of the joint venture. Uh, most obviously for the ambulance to be listed as an owned auto and the country mutual policy, the joint venture clearly procured, uh, the country mutual policy. They went to country mutual and said, we own this ambulance. Can you please ensure it country mutual said yes. Uh, that's intent at the time of the collision. Uh, moreover, it's important to note that the ambulances certificate of title, uh, this was dated, uh, in 2009 lists, the joint venture is the owner of the vehicle. Uh, as we know, a certificate of title, uh, to an automobile is evidence of legal title. It's a prima facie presumption of ownership. Uh, which arises from a certificate of title and this presumption maybe, maybe rebutted by competent evidence of actual ownership. Uh, so as, as country mutual notes, a certificate of title is not a hundred percent irrefutable. Uh, it does create a rebuttable presumption of ownership. The issue though, is that country mutual can do nothing to rebut that presumption of actual ownership at the time of the collision. Uh, country mutual is, is asking this court, uh, to ignore the 2009 certificate of title, the 2012 insurance policy that I procured the 2009 bill of sale for the ambulance. That also lists the joint venture as the owner and the police report for the accident, which also lists the joint venture as owner. Uh, instead country mutual is relying exclusively on, on the agreement, formulating the joint venture from 23 years, uh, 23 years before the accident, certainly not the time of the collision. And just as a brief side note, the actual language of the agreement is fairly ambiguous in its own right. Paragraph eight of that agreement provides only that quote, all property, both real and personal acquired by Alhambra and Hamel here under shall be owned equally by that. Uh, that's the end of the quote. As I interpret that it appears to be saying only that Alhambra fire and Hamel fire are equal partners, uh, in Alhambra, Hamel, not necessarily that they own the property in their individual capacities, but no matter how you interpret that agreement from 1989, 23 years before the accident, can't rebut the presumption that the intent was that the ambulance was owned by the joint venture where literally everything relating to that ambulance from purchase to the insurance, the aftermath of the accident suggests actual ownership by the joint venture. Uh, indeed the case is cited by country mutual in which the rebuttable presumption of actual ownership was overcome by competent evidence. They show very different situations. Uh, in,  uh, uh, who simply didn't record that certificate of title,  inclined versus Pritikin. We see a vehicle that was gifted from parents to child where the search certificate of title wasn't transferred and country mutual versus at the life, uh, 1979, Illinois appellate cases, a seller of a truck went into a store. Uh, he left a certificate of title on the counter of the store and it was never recorded. Case like, uh, in the matter of Robinson, this was again, son who failed to record the transfer of a certificate of title from his father. None of these resemble obviously, um, the case before this court where two sophisticated municipalities formed a joint venture purchase an ambulance in the name of that joint venture. Uh, so circling back to the policy language, both policies provide primary coverage for owned autos. They provide excess coverage for non owned autos. Thus country mutual had a primary duty to defend under the terms of its policy and continental Western is entitled to recoupment of the attorney's fees and defense costs incurred by continental Western. And that defense, uh, and indeed in these last five minutes, uh, we could talk about the second issue of appeal, uh, which is the district court's award of fees and defense costs in the amount of 250,000, $540 and 90 cents. Uh, so as we know from cases like Johnson controls versus Edmund controls, this court has held that reasonableness of attorney's fees. Uh, they're reviewed under, uh, an abuse of discretion standard. Uh, and an important point here is that we know from cases like a picket, which we talk about in the, in the briefs, uh, this court has routinely held that the best evidence of whether attorney's fees are reasonable is whether a party has paid them and the country mutual is briefing. It noted noticeably fails to grapple with that. Uh, here, continental Western is it's, uh, briefing regarding, uh, the award of damages provided the court with an affidavit from continental Western claims professional Keith Keller, whoever that continental Western had paid its attorney's fees and defense costs in full. Now remember this was with no guarantee that it was eventually going to receive recoupment from, uh, from country mutual, uh, in cases like medcom, uh, holding also talked about in the briefs. Uh, the court noted, uh, that, uh, it need not do a detailed hour by hour review, uh, after the fashion of a fee shifting statute. And instead found that district courts are best restricted to an overview of quote the aggregate aggregate costs to ensure that they were reasonable in relation to the stakes of the case and the litigation strategy. But now with notwithstanding, uh, this prima facie evidence of reasonableness that, that we find by payment of the, of the attorney's fees and defense costs, continental Western still did as the district court noted, submit hundreds of pages of attorney billing records, including the time spent, the description of all work completed. And indeed, these were the exact items that country mutual in my view, inexplicably argued that continental Western did not provide. Indeed, the district court called country mutuals contentions that, that continental Western did not provide this information quote mindboggling, uh, country mutual, uh, also claims an error in an evidentiary evidentiary ruling made by the district court and its determination of damages, uh, specifically country mutuals contending that it was an abuse of discretion to strike the affidavit of an attorney named Steven Mudge. Uh, this was an attorney who defended another defendant in the underlying litigation who I guess was prepared to opine on the reasonable reasonableness of the attorney's fees paid by continental Western. Uh, to be clear, the district court struck, uh, this affidavit because it was filed without advanced notice without leave of court and without explanation, just two days before oral arguments regarding damages. Uh, it was also filed after briefing was complete, obviously, uh, and was essentially going to be tantamount to a surreply by country mutual. Uh, this court has repeatedly held in cases like, like spheres, uh, that it's not an abuse of discretion for a district court to enforce the deadlines for responding. Uh, uh, basically that, uh, a district court controls its own schedule, controls its own deadlines. Uh, finally country mutual is claiming that the district court abused its discretion by refusing to hold an evidentiary hearing instead of holding an oral argument on the issue of fees and costs. Uh, this is simply inaccurate. Uh, as recently as February, 2020, uh, this court has held that it was not an abuse of discretion to decline to hold an evidentiary hearing, uh, that would only address arguments, uh, uh, and materials already presented to the court and briefings. Uh, that was the Royce case. Uh, uh, as judge St. Eve wrote, uh, wrote in Royce, a district court is not required to hold an evidentiary hearing on attorney's fees where a party had the opportunity to make objections to the, to the petition. Uh, in such an instance, the only purpose would be for these objections to be restated. Same as true here after continental Western provided the district court with hundreds of pages of detailed billing records, country mutual objective. They had every opportunity to, to object as they saw fit. And the district court of course, had every right to exercise its discretion to decline, to hold an evidentiary hearing, uh, because continental Western was forced to step up to the plate to defend Hamel fire. When country mutual owed that duty, continental Western is entitled to recoup those attorney's fees and defense costs. Continental Western respectfully requests that this court affirm the district court's judgment in its entirety and award continental Western $240,146 and 18 cents and attorney's fees, uh, defense costs, uh, and defense costs, uh, $10,394 and 72 cents in pre-judgment interest that the district court awarded. Uh, that comes out to a total of $250,540 and 90 cents. Uh, additionally, continental Western requests post-judgment interest from the date of the district court, September 10th, 2020 judgment. Uh, that would be under 28 USC section 1961. Uh, thank you. Your honors. Mr. Jaffee. Thanks to you, uh, Mr. Carlson, you, uh, we'll give you a minute, uh, to rebut. Only one minute. Well, go ahead and we'll see how it goes. If you're making points, I'm not going to cut you off or just on the, on the, cause I just said that 10, okay. Um, I mean, intent of the insurance policies, country did defend at Ham, uh, the ambulance service. It was, there was no, the intent of the policy was to ensure the ambulance service, which it defended. The two policies were not written anywhere in connection or knowledge of each other. They're totally separate entities and policies. The insurance companies have no bearing or the insurance companies or policy of no bearing on the issue of the intent of ownership of the vehicle, which is the only competent evidence is that it was owned also at a minimum by Hamill and with the attorney fee issues, your honor. Our point was the burden under the law was on continental to establish their fees by meeting the factors set forth in the Harris case. And the Kaiser Kaiser case, these, including the reasonableness of the fees, the fact that skill and the standing attorneys, the nature of the case, the novelty, the questions involved the connection between the fees and the litigation. So it's not a standard just that, Oh, here's some bills in their pay. The court, the trial court, had no familiarity with the work that was done. It was just a listing, a brief listing of some entries of fees. And now they turned it into a burden on country to rebut every entry when the court had initially had it scheduled an evidentiary hearing, and then it struck that evidentiary hearing. So it only relied on the briefs. The only way the factors were addressed at all was the arguments of continental in their briefing, which was not, it just hearsay was not competent evidence from like the attorneys, any of the attorneys that did the actual work. The point of Mr. Mudge was going to be testifying at the evidentiary hearing, but that got struck. He was out of town. So we, we put an affidavit in which the court didn't consider, but the court, then that's turning the burden back on the country. Mr. Mudge's affidavit, basically the lead counsel in the defense of the case charged one third less than the same attorneys going to the same depositions and hearings and gave multiple examples of two or three times the time spent charged by Hamels lawyers for the same deposition or court appearance where they should be the same, but okay. Mr. Carlson, let's go ahead and wrap it up and we'll, okay. The, the, the, the ownership, I think is certainly at a question of fact, as counsel's admitted, he's arguing, he was arguing that there was a question of fact based on how he's interpreting the, the the bylaws and the affidavit of the treasurer of his, of his insured. And on the, the error was the trial court, not having any kind of hearing and addressing any of the standards for fee petitions, where it's Continental's burden, not in turning the burden back on the country. Um, okay. Let's leave it at that. We understand we asked the court. Yeah, go ahead. We understand your position. Yeah, that, thank you, your honor. We respectfully request the court, uh, reverse the judgment of the trial court and or send it back for further proceedings, consistent with what we request in our brief. Uh, thank you, your honor. Okay. Thanks to both parties. The case is submitted. We'll move to our.